UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DANA KRUPNICK, :
:
                 Plaintiff, :
: **MEMORANDUM & ORDER**
    -against- : 13-CV-3992
:
CAROLYN W. COLVIN, :
Acting Commissioner of Social Security, :
:
                 Defendant. :
------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On June 14, 2011, Plaintiff Dana Krupnick ("Plaintiff") filed an application for Social Security disability insurance benefits ("DIB") under the Social Security Act (the "Act"), alleging disability since July 5, 2010. (Certified Administrative Record ("R"), Dkt. Entry No. 15 at 122-23). On August 6, 2011, her application was denied and she timely requested a hearing. (R. 70-77.) On May 8, 2012, Plaintiff appeared with counsel, and testified at a hearing before Administrative Law Judge Scott C. Firestone (the "ALJ"). (R. 32-68.) By a decision dated May 18, 2012, the ALJ concluded Plaintiff was not disabled within the meaning of the Act. (R.16-25.) On May 23, 2013, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-5.)

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). (*See* Compl., Dkt. Entry No. 1.) Plaintiff moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking a reversal of the denial of benefits and a rehearing to determine benefit calculation. (*See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt. Entry No. 12.) Defendant cross-moved for judgment on the pleadings, seeking affirmation of the Commissioner's decision to

deny disability benefits.  (*See* Mem. of Law in Supp. Of Def.'s Cross-Mot. in Opposition to Pl.'s Mot. for J. on the Pleadings ("Def. Mot.."), Dkt. Entry No. 14.)  For the reasons set forth below, Plaintiff's motion is granted in part and the Commissioner's motion is denied.  This action is remanded to the Commissioner for additional proceedings consistent with this Opinion.

## BACKGROUND

**A.     Non-Medical and Self-Reported Evidence**

Plaintiff was born in 1982.  (R. 122.)  She completed a bachelor's degree in 2005.  (R. 146).  Plaintiff worked for Hough and Guidice Realty, from September 2006 to June 2007.  (R. 183).  She worked as a sports writer at Newsday from January 2007 until June 2007, on a part-time basis, and as a claims adjuster for Geico from September 2007 until July 2010, at which point she gave birth to her twin children.  (R. 34, 146, 193.)  In January 2012, Plaintiff returned to work at Prudential Douglas Elliman Real Estate, but was subsequently let go as she could only work part-time.  (R. 61, 193.)

Plaintiff applied for disability in June 2011, citing multiple sclerosis ("MS") as the primary reason she was unable to work.  (R. 145, 149.)  She alleges that her MS symptoms worsened during her pregnancy, including increased fatigue and numbness, decreased balance, increased sensitivity to heat, an inability to lift or carry items, and a decrease in memory and focus.  (R. 35, 41, 48.)  She also cited an increase in falling episodes, dropping items, and anxiety.  (R. 45, 63-67.)  Plaintiff states that she has difficulty walking distances longer than a mile, and must take breaks every fifteen minutes while walking.  (R. 43-44.)  To compensate for her fatigue, she favors one side and, as a result, has "walk[ed] into . . . wall[s]."  (R. 41.)  Plaintiff is right-hand dominant and experiences greater symptoms of tingling and numbness in her right hand than left.  (R. 48.)

Plaintiff is the primary caregiver for her twin children. (R. 36.) Plaintiff's husband assists with some household and childcare activities, including bathing the twins, cooking, carrying laundry, and caring for their cats. (R. 36-37, 43.) Plaintiff's mother assists her with caring for her children two days each week. (R. 35.) Her father, sister, and friends also provide additional support as needed. (R. 35, 37, 42.) Plaintiff performs housework; however, she avoids carrying things up and down the stairs as she has fallen. (R. 36, 40.) She has experienced difficulties carrying her children, nearly dropping them several times after losing her grip or balance. (R. 45.) On average, Plaintiff takes two naps daily. (R. 35, 39, 66). Plaintiff is able to drive, occasionally shop, use the computer, go to the movies, and dine at restaurants. (R. 39).

Plaintiff testified that she has difficulties concentrating and focusing, and takes Concerta for attention deficit disorder ("ADD"). (R 49, 63.) However, Concerta affects her ability to sleep. (R. 66). She has difficulty completing tasks "probably every day" and is able to read for fifteen minutes before losing focus. (R. 49, 55, 58.)

**B.  Medical Evidence From the Relevant Period (July 5, 2010-Present)**

On August 9, 2010, Plaintiff was treated by Dr. Vincent F. Macalsuso, a neurologist, regarding her MS. (R. 231.) She cited an increased sensation of pins and needles in her right hands and expressed concern that her MS was worsening. (*Id.*) She requested to start re-taking Tysabri as she had given birth and that medication no longer presented a harm to her children. (*Id.*) Her physical examination showed normal station, gait, and sensation. (R. 231-32.) Dr. Macaluso noted trace dysmetria on the right with finger to nose testing. (R. 232). Dr. Macaluso noted that Plaintiff's symptoms had worsened slightly since the last visit, and diagnosed her with MS, fatigue, cognitive defects, personality change, lack of coordination, paresthesias, and

hemiplegia. (*Id*.) Dr. Macaluso ordered magnetic resonance imaging ("MRI"), blood work, a Zung Anxiety Questionnaire, and a monthly administration of intravenous Tsabri. (R. 232-33.)

Plaintiff underwent an MRI of the brain on August 26, 2010. (R. 229.) Dr. Eliyahu Englesohn reviewed the MRI and determined that there were numerous white matter lesions consistent with the diagnosis of multiple sclerosis; however, none of those lesions demonstrated abnormal enhancement. (*Id*.)

On February 11, 2011, Dr. Macaluso examined Plaintiff regarding her MS symptoms. (R. 210-12.) Dr. Macaluso noted that Plaintiff's symptoms remained stable, finding her motor strength was at 5/5, her gait and station were normal, and her memory comprehension was satisfactory. (R. 210.) He noted that results of her neurocognitive testing revealed below average attention, executive functioning, and information processing speed. (R. 211.) He recommended that Plaintiff take Adderall for her attention and memory problems. (*Id*.)

On June 6, 2011, Dr. Macaluso examined Plaintiff and found her condition to be stable, with some decreased motor strength on her left side. (R. 239.) She exhibited trace dysmetria on right finger to nose testing. (R. 240.) Her memory and comprehension appeared normal. (R. 239). Plaintiff mentioned an increase in falling, averaging once per week. (*Id*.) Dr. Macaluso ordered an MRI and switched her from Adderall to Wellbutrin. (R. 241.) Additionally, he recommended physical therapy three times per week for a total of six weeks. (*Id*.)

On June 23, 2011, Plaintiff underwent an MRI of the brain, which showed no significant interval changes since her last MRI. (R. 215.)

On July 27, 2011, Andrea Pollack, D.O., examined Plaintiff on behalf of the Division of Disability Determination. (R. 216.) Dr. Pollack noted that Plaintiff was able to clean five times per week, do laundry once a week, shop with assistance, shower and care for herself, read, watch

4

television, socialize with friends, and go to the movies. (R 217.) Dr. Pollack reported normal gait and station, 5/5 grip strength, and normal finger to nose testing. (R. 218.) During a sensory exam, Dr. Pollack found decreased sensation to light touch as well as pain in several toes. (*Id*.) Dr. Pollack found Plaintiff to have a mild restriction on walking, climbing stairs and standing, as well as a mild restriction in lifting, carrying, and pushing due to right hand numbness. (*Id*.)

On September 7, 2011, Dr. Macaluso examined Plaintiff regarding complaints of falling episodes, lethargy, parestesias, and increased difficulties with her right foot. (R. 245.) During memory testing, Plaintiff was able to repeat 3/3 items. (*Id.*) However, she showed signs of low reflexes and was unable to perform rapid alternating movements of the feet. (R. 246.) Dr. Macaluso opined that Plaintiff had worsened since the last office visit due to her fall risk and noted that she continued to have trouble with attention, preventing her from completing tasks. (R. 247.)

Additionally on September 7, 2011, Plaintiff underwent an MS Assessment Battery report. (R. 254-59.) Her global cognitive score was 67.1/130, and she underperformed in memory, executive function, and attention. (R. 281.)

On September 12, 2011, Dr. Macaluso submitted a letter indicating that:

> The patient's neurocognitive testing reveals front lobe defects in attention, memory, and judgment. These findings are consistent with severe attention deficit disorder. Her current cognitive state, along with her inability to initiate movement secondary to her frontal lobe dysfunction, limits her from doing any type of work for at least one year.

(R. 248.)

On December 13, 2011, Plaintiff returned to Dr. Macaluso's office, indicating that her ADD, lethargy, and anxiety had stabilized since the previous office visit. (R. 249.) She exhibited normal strength throughout the upper and lower extremities. (*Id.*) Reflex testing

5

showed 2/4 symmetrically, with the exception of 1/4 in her left patellar. (R. 250.) Plaintiff was unable to perform rapid alternating movements with her feet, but was able to perform normal alternating movements with her feet. (*Id*.) Dr. Macaluso opined that Plaintiff's condition had improved since the previous office visit and recommended that she follow up in three months. (R. 251.)

On March 21, 2012, Dr. Macaluso completed an MS Impairment Questionnaire noting that Plaintiff was diagnosed with MS, experienced numbness in her lower extremities and hand, and suffered from poor coordination, unstable walking, balance problems, fatigue, weakness on the right side, sensitivity to heat, and memory and attention difficulties. (R. 260.) Plaintiff was unable to stand or walk for long periods of time due to weakness on her right side. (R. 263.) The most severe issues were weakness, cognitive impairment, fatigue, difficulty walking, and balance. (R. 261.) Dr. Macaluso opined that her limitations had been present since July 2008 and were exacerbated by stress, extreme temperature, and over-exertion. (R. 263.) He concluded that she could tolerate low work stress, but that she suffers from anxiety and fatigue, which impair her cognition and attention. (*Id*.) He additionally mentioned that stress can cause flare-ups, leading to treatment or a hospital stay. (*Id*.) Regarding Plaintiff's medication, he reported that the effects of Tsyabri gave short-term benefits, wearing off prior to subsequent treatments, at which point she experienced weakness. (R. 264.) Dr. Macaluso opined that Plaintiff was able to sit for two hours a day and sit or stand for a total of one hour a day and needed to get up and move every one or two hours for fifteen minutes at a time. (*Id*.) He additionally estimated that she would miss work more than three times a month due to her symptoms and infusion therapy. (R. 265.) He stated that she could not lift or carry anything

above five pounds. (*Id*.) Finally, Plaintiff had unspecified psychological limitations, and needed to avoid fumes, gas and extreme temperatures, as well as kneeling, bending, and stooping. (*Id*.)

On April 16, 2012, Dr. Pollack re-examined Plaintiff on behalf the Division of Disability Determination. (R. 269.) Dr. Pollack reported that Plaintiff was able to walk on her heels and toes without difficulty, used no assistive device, and had normal gait and station, but was imbalanced from tandem heel to toe walk. (R. 270.) She further noted that Plaintiff had 5/5 grip strength in proximal and distal muscles, and opined that Plaintiff had moderate restrictions in walking, climbing stairs, and standing. She further opined that Plaintiff should avoid heights, operating heavy machinery, activities that require heavy exertion, and activities that may put Plaintiff at risk for falling. (R. 271.) She recommended that Plaintiff undergo an orthopedic evaluation regarding restriction from a previous left knee injury occurring in 2002. (*Id*.). Additionally, Dr. Pollack completed a Medical Source Statement of Ability to do Work Related Activities, which indicated that Plaintiff could stand for thirty minutes without interruption, sit for eight hours in a day, stand for one hour in a day, and walk for one hour in a day. (R. 272-73.) She found that Plaintiff could not lift objects weighing above 51 pounds, but could frequently lift objects weighing 21-50 pounds. (R. 272.) Plaintiff should refrain from operating foot controls, climbing stairs, ramps, ladders or scaffolds, balancing, stooping, kneeling, crouching or crawling primarily due to imbalance and decreased foot sensation. (R. 274.)

## DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits within sixty days after the mailing of the notice of decision. 42 U.S.C. § 405(g). A district

court, reviewing the final determination of the Commissioner, does not conduct de novo review of a claimant's alleged disability, but rather must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998) (internal citations omitted). In determining whether the decision is supported by substantial evidence, the court must ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). Additionally, the court must ask whether the decision is supported by more than a mere scintilla of relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

In its determination, the district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.     Disability Claims**

In order to receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status, demonstrating disability status by presenting medical findings established by medically acceptable clinical or laboratory diagnostic techniques as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs are required to follow a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step the ALJ finds that the claimant is disabled, the inquiry ends there. At the first step, the ALJ ensures that the claimant is not working and performing "substantial gainful activity" and that claimant was insured at the alleged onset date, as this would mean the claimant is not disabled regardless of the impairments alleged. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 404.320. At the second step, the ALJ considers whether the claimant has a "severe impairment," without referencing or considering age, education work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. § 404.1520(c). At the third step, the ALJ considers if the impairment meets or equals impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"), entering a decision of disabled if it is found to equal a Listing impairment. *See* 20 C.F.R. § 404.1520(d).

Steps four and five are examined should the claimant not have a listed impairment in order for the ALJ to make a finding about the claimant's residual function capacity ("RFC"). 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. § 404.1520(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. In evaluating whether work exists in the national economy, there is no need to limit this evaluation by looking at the immediate geographic area. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983). Should relevant work exist in the national economy, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

## C. The ALJ's Decision

On May 8, 2012, the ALJ issued a decision denying Plaintiff's claim. (R. 16-25.) The ALJ followed the five-step procedure in making his determination that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), and, therefore, was not disabled. (R. 21-25). At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 2010. (R. 21.) At the second step, the ALJ found the following severe impairment: MS. (*Id.*) At the third step, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals the severity of one of the impairments included in the Listings. (*Id.*)

At the fourth step, the ALJ found that Plaintiff could perform medium work as defined in 20 CFR § 404.1567(c), except that she could not lift or carry more than twenty-five pounds and must avoid dangerous equipment and unprotected heights. (R. 22.) The ALJ found that Plaintiff was able to perform her past relevant work as a clerical worker, which was a low exertion

position, and that her work environment restrictions and lifting/carrying restrictions could be accommodated in a similar position. (R. 24-25.)

**D.  Analysis**

Plaintiff moves for judgment on the pleadings, contending that the ALJ: (1) incorrectly applied conclusory findings that do not reference any medical or non-medical evidence; (2) failed to correctly weigh the medical evidence, most notably Dr. Macaluso's opinion regarding Plaintiff's inability to perform sedentary work; (3) failed to consider Plaintiff's mental impairments in his decision; and (4) failed to properly evaluate Plaintiff's credibility. (*See generally* Pl. Mem.). The Commissioner cross-moves for judgment on the pleadings, seeking affirmation of the denial of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards and correctly weighed the evidence to determine that Plaintiff was not disabled. (*See generally* Def. Mem.)

**1.  Unchallenged Findings**

The ALJ's findings as to steps one and two are unchallenged. (*See generally* Pl. Mem; Def. Mem.) Upon a review of the record, the Court concludes that the ALJ's findings at steps one and two are supported by substantial evidence.

**2.  Analysis on Medical Listings**

The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (R. 21.) In evaluating Plaintiff's impairment, the ALJ's analysis consists of one conclusory statement which fails to reference any of the Listings. (*Id.*) The ALJ likely considered Listing 11.09 (b) or (c); however, the ALJ's analysis is void on this issue. To satisfy Listing 11.09(b), a plaintiff must demonstrate MS with a ". . . mental impairment as described under the criteria in . . . 12.02." To satisfy

Listing 11.09(c), a plaintiff must demonstrate MS with: "Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process."

A review of the medical record indicates that either of these subsections of Listing 11.09 were applicable to Plaintiff's impairment. Thus, further clarification, and in depth analysis of the evidence regarding these subsections is necessary. On remand, the ALJ shall specify which Listing is under consideration and provide greater detail as to the medical evidence upon which the ALJ's findings are grounded.

3.   **Plaintiff's RFC**

   a.   **The ALJ's RFC Assessment**

The ALJ found that Plaintiff retained the RFC to perform medium work, was able to lift and carry up to twenty-five pounds, but was required to avoid "work[ing] around dangerous equipment [and] unprotected heights." (R. 22.) Medium work involves lifting no more than fifty pounds, and frequently lifting or carrying objects weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c). Medium work also involves standing and/or walking for six hours in an eight-hour workday, and sitting for the remaining time. *See* SSR 83-10, 1983 WL 31251, at *6. "Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms." *Id*. Finally, "[i]n most medium jobs, being on one's feet for most of the workday is critical." *Id*.

In reaching his conclusion, the ALJ noted that Dr. Macaluso's statements regarding Plaintiff's work restrictions were contradictory to the rest of the medical evidence, and, thus,

12

accorded greater weight to the work restrictions specified by the agency consultant, Dr. Pollack. (R. 24.) In discounting Dr. Macaluso's opinion, he further noted that Plaintiff "actively cares for her twins and her pets, shops, cleans, launders, cooks and performs other tasks that would require her to stand or walk." (R. 23.)

Additionally, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (R. 22.) Thus, the ALJ discredited Plaintiff's testimony.

### b. Application of Treating Physician Rule to Dr. Macaluso's Opinion

Plaintiff contends that the ALJ erred in discrediting Dr. Macaluso's opinion regarding her work restrictions, particularly Dr. Macaluso's September 17, 2011 RFC assessment. (Pl. Mem. at 2-9.) The Court agrees.

Under the treating physician rule, the ALJ must give "deference to the views of the physician who has engaged in the primary treatment of the claimant" when examining the severity of the alleged impairment. *Burgess v. Astrue*, 537 F. 3d 117, 128 (2d Cir. 2008) (quotation marks omitted); *see also* 20 C.F.R. § 404.927(c)(2) (stating that the ALJ must give controlling weight to the treating physician's opinion regarding the nature and severity of the impairments). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F. 2d 43, 46 (2d Cir. 1988). The Second Circuit has noted that "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other

13

substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)).

In determining whether to give controlling weight to the treating physician, the ALJ must look to several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 416.927(c)(2)-(6). The ALJ must clearly state his or her reasons for not giving controlling weight to a treating physician's opinion. *See Halloran v. Barnhart*, 362 F. 3d 28, 31-32 (2d Cir. 2004).

Here, the ALJ assigned "substantial but not considerable weight" to the opinions of Plaintiff's treating neurologist, Dr. Macaluso. (R. 24.) In justifying his decision to discredit Dr. Macaluso, the ALJ cited the "substantial" medical evidence that contradicted Dr. Macaluso's opinions; however, this "substantial" medical evidence consists of two consultative visits to Dr. Andrea Pollack, a general practitioner, who examined Plaintiff upon the request of the Social Security Administration. (R. 23-24, 216-18, 269-74.) The ALJ failed to explain why he relied on the opinions and findings of a consulting generalist instead of a treating specialist. Indeed, the ALJ was required to consider and make findings as to the factors outlined in 20 C.F.R. § 404.1527(c), including an evaluation of the frequency and length of the treatment relationship, as well as whether the physician was a generalist or a specialist.

The ALJ's failure to adequately apply the treating physician rule is particularly problematic in this instance. Plaintiff suffers from MS, which is known to be a serious, progressive illness that often requires long-term monitoring by a specialist to adequately diagnose and treat. As such, this case must be remanded for the ALJ to provide greater

specificity as to the reasons underlying his decision to discredit Dr. Macaluso's findings and opinions.

### c. Plaintiff's Credibility

Plaintiff contends that the ALJ erred in discrediting her statements regarding the severity of her symptoms. (Pl. Mem. at 14-18.) The Court agrees.

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *See Taylor v. Barnhart,* 83 F. App'x 347, 350 (2d Cir. 2003). However, the ALJ is afforded discretion to assess the credibility of a claimant and is not "required to credit [Plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue,* 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue,* 280 F. App'x 20, 22 (2d Cir.2008)). In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue,* 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p. Second, if the ALJ finds that the individual suffers from a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c).

When the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any

15

medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The Second Circuit has stated that, "[i]f the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, [she] must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart*, 687 F. Supp. 2d at 435. When the ALJ neglects to discuss at length her credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether her decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.,* 2011 WL 128565, at *5 (E.D.N.Y. Jan.14, 2011) (finding the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding the case where the ALJ "considered some, but not all of the mandatory" factors).

Turning to the instant action, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her statements "concerning the intensity, persistence, and limiting effect of [her] symptoms" were not credible to the extent that they were inconsistent with the RFC found by the ALJ. (R. 22.) However, substantial evidence in the record contradicts the ALJ's credibility determination and characterization of Plaintiff's testimony.

Notably, the ALJ mischaracterized Plaintiff's testimony regarding her impairments. In discussing Plaintiff's RFC, the ALJ stated that she regularly is able to walk a mile. However,

while Plaintiff testified that she is capable of walking up to one mile, that task takes her at least one hour and she requires numerous breaks to rest. (R. 43-44.) While the ALJ cites this as evidence of her ability to perform medium work, this is evidence instead of weakness and impairment. Moreover, Plaintiff testified that she is unable to go to the park alone with her children or shop without assistance. (R. 42.) Her mother helps her twice a week with her children. (R. 36.) The ALJ glossed over these statements, which also indicate an impairment rather than the RFC to perform medium work.

Additionally, the ALJ noted that Plaintiff "watches television, uses the computer, reads" and has "no problem relating to others, following instructions, or remembering to care for her needs." (R. 23.) However, this is a severe mischaracterization of Plaintiff's testimony. While Plaintiff testified she is able to engage in these activities, she also indicated that she is unable to focus on any activity for more than fifteen minutes. (R. 58-59, 65.) Her inability to concentrate for longer than fifteen minutes hardly would make her a viable candidate for any full time clerical position. Indeed, Plaintiff testified that she has difficulty sitting for longer than a half-hour period and naps several times daily due to fatigue. (R. 35, 44.) Finally, while the ALJ stated that Plaintiff "make[s] dinner daily," the record contradicts this assertion as Plaintiff's husband cooks for their family and handles other household tasks to support Plaintiff. (R. 23, 36-37, 43, 47.)

The ALJ also considered irrelevant information in making his determination regarding Plaintiff's RFC. For example, the ALJ relied on Plaintiff's prior ability to work fifteen hours a week; however, this information is not pertinent to determining Plaintiff's RFC, as part-time work is not considered 'substantial gainful activity' for purposes of social security disability. (R. 23.) Additionally, the ALJ failed to address the fact that Plaintiff probably would miss three or

more days of work each month due to her infusion therapy. (R. 52-53, 265.) Certainly employers would find such a requirement difficult to accommodate. In fact, Plaintiff cited difficulties with her previous employer regarding her consistent absences. (R. 53.) Additionally, while the ALJ concluded that Plaintiff is able to carry items weighing up to "twenty to fifty pounds," Plaintiff has asserted she no longer carries anything down the stairs after dropping her children and falling on several occasions. (R. 23, 24, 44-45, 60.)

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is denied and Plaintiff's motion is granted to the extent that this action is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for additional proceedings in accordance with this Opinion. Specifically, the ALJ must: (1) specify which Listing(s) were under consideration; (2) explain why he assigned greater weight to a consulting generalist and lesser weight to a treating specialist; and (3) re-evaluate Plaintiff's credibility in a manner consistent with this Order and the evidence in the record.

SO ORDERED.

Dated: Brooklyn, New York
March 23, 2015

/s/
DORA L. IRIZARRY
United States District Judge